IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN C. PRIGGE,                  :    CIVIL ACTION
                                 :    NO. 09-175
        Plaintiff,              :
                                 :
        v.                      :
                                 :
SEARS HOLDING CORP.,            :
                                 :
        Defendant.              :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          JULY 9, 2010

        Plaintiff John C. Prigge ("Plaintiff" or "Prigge")

commenced this suit against his former employer, Sears Holding

Corporation ("Defendant" or "Sears"), alleging that Defendant

discriminated and retaliated against him in violation of the

Family and Medical Leave Act of 1993 (the "FMLA"), 29 U.S.C. §

2601 et seq., the Americans with Disabilities Act (the "ADA"), 42

U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act

(the "PHRA"), 43 P.S. § 951 et seq.

        Defendant moves for summary judgment on the grounds

that Plaintiff has failed to establish a prima facie case for

discrimination and retaliation under the FMLA, the ADA, and the

PHRA.  In the alternative, Defendant moves for summary judgment

on the grounds that Plaintiff has failed to meet his burden of

providing sufficient evidence to establish that Defendant's

proffered reasons are a pretext under the <u>McDonnell Douglas</u> framework.

For the following reasons, Defendant's motion for summary judgment will be granted.

I.    **BACKGROUND**

A.    **FACTS**[1]

For purposes of this motion, the relevant facts are separated into three time periods: (1) Pre-Hospitalization Period (from Plaintiff's date-of-hire in April 2007 until his hospitalization on January 24, 2008); (2) Hospitalization Period (from January 24 through January 30, 2008); and (3) Post-Hospitalization Period (from January 31, 2008 until Plaintiff's termination on February 26, 2008).

1.    **PRE-HOSPITALIZATION PERIOD**

Plaintiff was hired as a manager-in-training by Sears in April 2007. (Pl.'s Dep. 17:2-3, 28:19-24, Sept. 24, 2009.) Following his hiring, Plaintiff worked at several Sears department stores in order to learn how to operate and manage a store. (<u>Id.</u> at 28:25-29:20.)  In September 2007, Plaintiff was

_____

[1]  Where any facts are in dispute, they are viewed in the light most favorable to Plaintiff as the non-moving party.

promoted to manage the Sears store at the Granite Run Mall in Media, Pennsylvania (the "Media Sears"). (<u>Id.</u> at 29:16-22, 118:15-18; Def.'s Mot. Summ. J. at 2.) Upon assignment to the Media Sears, Plaintiff was under the direct supervision of David Ikkala ("Ikkala"), a regional manager for Sears. (Pl.'s Dep. 131:6-18.)

Plaintiff claims that he managed the Media Sears without issue from the date of his promotion until the middle of January 2008, at which time he took an approved vacation from January 12 through January 20. (<u>Id.</u> at 124:3-5, 137:16-24, 181:13-183:15, 196:12-197:14.) Plaintiff admits that after returning from vacation, he left work early on January 22, 2008 and that he also left work early once or twice in the preceding weeks. (<u>Id</u>. at 119:2-121:17.)

Defendant, however, alleges that Plaintiff began having frequent, unexcused absences in December 2007 and that those absences continued through January 2008. (Def.'s Mot. Summ. J. at 3-5.) Additionally, Defendant alleges that Plaintiff left work early on numerous occasions from January 6 through January 11, 2008 and each day from January 21 through January 23, 2008. (<u>Id.</u>) Defendant claims that Ikkala met with Plaintiff on January 11, 2008 and addressed his frequent absences and performance.

(Id. at 4.)

## 2. HOSPITALIZATION PERIOD

Around January 23 or January 24, 2008, Plaintiff experienced a severe mental breakdown due to complications from Bipolar I Disorder.[2] (Pl.'s Dep. 89:24-90:14.) On January 24, 2008, Plaintiff was admitted to the Horsham Clinic[3] for treatment and observation. (Id. at 158:18-25.) Plaintiff had been scheduled to work on January 24 but was unavailable to work due to his hospitalization. (Def.'s Mot. Summ. J. Ex. C at ¶ 14.)

On the day he was hospitalized, Plaintiff's wife called the Media Sears, where she spoke to a subordinate assistant manager.[4] (Pl.'s Dep. 131:14-16.) Plaintiff's wife informed the assistant manager that her husband had been hospitalized and would not be reporting to work that day. (Id. at 136:5-137:8.)

---

[2] Bipolar I Disorder is characterized by the occurrence of one or more manic episodes which is a distinct period during which there is an abnormally and persistently elevated, expansive, or irritable mood. See American Psychiatric Association Diagnostic & Statistical Manual of Mental Disorders 357, 382.

[3] The Horsham Clinic provides comprehensive behavioral health services to children, adolescents, adults, and their families.

[4] The parties dispute whether Plaintiff's wife spoke to Patricia DePetris or Stephen DelGrippo. However, the parties do not dispute the substance of that phone call. Thus, the identity of the recipient is immaterial.

-4-

Plaintiff's wife did not provide further details concerning her husband's hospitalization nor a date on which he would return to work. (Id.) After this initial phone call, the parties did not communicate again during the hospitalization period. (See Def. Mot. Summ. J. at 6-7.) Plaintiff was discharged from the Horsham Clinic on January 30, 2008. (Pl.'s Dep. 170:18-21.)

### 3. POST-HOSPITALIZATION PERIOD

Following his release from the Horsham Clinic, Plaintiff telephoned Ikkala on January 31, 2008 and stated that he had been hospitalized since January 24, but was discharged and ready to return to work. (Pl.'s Resp. Mot. Summ. J. Ex. A at 2.) Plaintiff claims that during this conversation he informed Ikkala that he suffers from Bipolar I Disorder and that it had caused his mental breakdown. (Pl.'s Dep. 135:3-10.) Plaintiff also states that Ikkala informed him that, upon his return to work, he would need to provide medical documentation explaining his absence and clearing him to return to work. (Id. at 135:11-16.) Plaintiff further alleges that he spoke with Ikkala by telephone again on February 1, 2008 at which time he and Ikkala agreed that February 4, 2008 would be the date he would return to work.[5]

_____

[5] Defendant claims the return date was set during the January 31 phone conversation and that no conversation occurred

(Pl.'s Resp. Mot. Summ. J. Ex. A at 2.)

On February 4, 2008, Plaintiff did not report to work.
He attributes his failure to return to work to an inability to
obtain medical documentation from his urologist, Dr. James
Squadrito.[6]  (Id.)  Despite not reporting to work, Plaintiff did
not contact Ikkala until February 7.  (See Pl.'s Resp. Mot. Summ.
J. at 8.)  Plaintiff contends that during the February 7
conversation, Ikkala instructed him to report to work on February
11, 2008.  (Id.)  Although Defendant disputes that any
conversation occurred on or around February 7, both parties agree
that February 11 was the first day that Plaintiff returned to
work since before his hospitalization.  (See Def.'s Mot. Summ. J.
at 10; Pl.'s Dep. 188:24-25.)

Upon returning to work on February 11, Plaintiff
presented Ikkala with a note from Dr. Squadrito, the discharge
instructions from the Horsham Clinic, and a note from a social

---

on February 1.  Because the parties agree on the proposed return
date, this discrepancy is inapposite.

[6]  Dr. Squadrito's relevance to this case is because
Plaintiff, before his hospitalization, had informed some
employees that he was experiencing a recurrence of prostate
cancer and undergoing chemotherapy.  The parties agree that
medical documentation was requested from multiple doctors because
Plaintiff, at least until January 30, 2008, was attributing his
absences to two separate health conditions.  (See Pl.'s Dep.
158.)

worker at the Horsham Clinic.[7]  (Pl.'s Resp. Mot. Summ. J. at 8.)

Later that day, Ikkala met with Plaintiff and informed him that

the medical documentation provided was inadequate because it did

not cover all dates of absence and did not clear him to return to

work.  (Id. at 9.)  Ikkala provided Plaintiff with Sears' "Leave

Medical Certification Form" documents which Plaintiff was

required to have his doctors complete.  (Id.; see also Def.'s

Mot. Summ. J. Ex. D-8.)  Plaintiff was sent home from work and

informed that he needed to obtain proper documentation before he

could return.  (Pl.'s Resp. Mot. Summ. J. Ex. A at 3.)

Plaintiff asserts that he left work and immediately

took the forms to his doctors.  (Pl.'s Dep. 161:18-22.)

Plaintiff further alleges that Dr. Squadrito returned the

completed form to Sears by fax on February 15 and the Horsham

Clinic returned the completed form to Sears on February 21.[8]

---

[7] These documents appear insufficient on their face to
justify Plaintiff's absences.  Dr. Squadrito's documentation
merely states that Plaintiff was treated for prostate cancer in
2005 and provides no information relevant to the current time
period.  (See Def.'s Mot. Summ. J. Ex. C-8,9.)  The Horsham
Clinic documents merely demonstrate that Plaintiff was
hospitalized from January 24 through January 30, 2008.  (See id.)
None of the documents relate to any absences outside of the
hospitalization period.

[8] The form submitted by Dr. Squadrito was largely
incomplete and indicated that Plaintiff did not have a serious
health condition.  (See Def.'s Mot. Summ. J. Ex. D-8.)  The
Horsham Clinic form was completed by Plaintiff's treating

(Pl.'s Resp. Mot. Summ. J. at 9.)

Approximately one week after Plaintiff was given the Sears forms, Ikkala sent Plaintiff a warning letter which detailed the need to document and substantiate unexcused absences for a range of dates that occurred before, during, and after Plaintiff's hospitalization. (Def.'s Mot. Summ. J. at 13, Ex. D-2.) Also, the letter stated that the documentation provided to date was insufficient and Plaintiff had forty-eight (48) hours to provide adequate documentation or face termination. (Id.) Plaintiff claims that he was confused by the dates contained within the letter; nevertheless, Plaintiff concedes that he did not clarify any confusion over said dates with Ikkala. (See Pl.'s Dep. 169:7-17.)

Plaintiff contends that he was in constant contact with Ikkala throughout this time period and that he provided Ikkala with regular updates. (Pl.'s Resp. Mot. Summ. J. Ex. A-2.) However, Plaintiff did not return to work from the time he was

---

physician, Dr. Denise Senyk, and indicated that Plaintiff had experienced a serious health condition from January 24 through January 30, 2008. (See id. at Ex. D-9.) More importantly, the form indicated that Plaintiff, as of January 30, 2008, was: (1) not required to work intermittently or on a reduced schedule as a result of his condition; (2) not medically required to be absent from work intermittently or on a reduced basis for treatment; and (3) not incapacitated. (See id.)

sent home on February 11 and, as of February 26, 2008, Plaintiff had not provided sufficient documentation regarding all of his absences. (Def.'s Mot. Summ. J. at 15.) Accordingly, Plaintiff was terminated on February 26, 2008 for unexcused absences and for failing to provide adequate medical documentation. (Id.)

## II. LEGAL STANDARDS

### A. SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party can "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Elassaad v. Independence Air, Inc., 604 F.3d 804, 808 (3d Cir. 2010). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson, 477 U.S. at 248. An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of the fact. Id. at 248-49. At the summary judgment stage, a court "resolve[s] all factual disputes and draw[s] all reasonable inferences in favor of the non-moving party." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135,

-9-

140 (3d Cir. 2004).

Where the non-moving party bears the burden of proof at trial, the movant may discharge its initial burden "by 'showing' that there is an absence of evidence to support the non-moving party's case." Id. (internal citations omitted). Once the movant has done so, the non-moving party "must set forth specific facts that reveal a genuine issue of material fact." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009) (citing to Fed. R. Civ. P. 56(e)(2) ("an opposing party may not rely merely on allegations or denials in its own pleadings; rather its response must . . . set out specific facts showing a genuine issue for trial")). "If the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial,' summary judgment is proper as such a failure 'necessarily renders all other facts immaterial.'" Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

### B. McDONNELL DOUGLAS FRAMEWORK

In the absence of direct evidence, the Third Circuit applies the familiar burden-shifting framework set forth in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to discrimination and retaliation claims under the ADA and the FMLA. See, e.g., Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 192 (3d Cir. 2009) (applying to ADA discrimination claim); Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (applying to ADA retaliation claim); Conoshenti, 364 F.3d at 146-47 (applying to FMLA retaliation claim). Under the McDonnell Douglas framework, a plaintiff first bears the burden of establishing a prima facie case of discrimination. 411 U.S. at 802. If the plaintiff offers sufficient proof of a prima facie case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the [adverse employment action.]" Id. Once the defendant articulates a legitimate, nondiscriminatory reason, the burden returns to the plaintiff who must then prove by a preponderance of the evidence that the proffered reason was not a true reason, but rather is a pretext for discrimination. Id. at 804.

To demonstrate pretext, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or

determinative cause of the employer's action."  <u>Tomasso v. Boeing</u> <u>Co.</u>, 445 F.3d 702, 706-07 (3d Cir. 2006) (quoting <u>Fuentes v.</u> <u>Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994)).  In other words, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the articulated legitimate,] non-discriminatory reasons.'"  <u>Id.</u> (quoting <u>Fuentes</u>, 32 F.3d at 765).

Although intermediate burdens shift back and forth, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  <u>Tex. Dep't of Comm.</u> <u>Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

### III. LEGAL ANALYSIS

#### A. FMLA CLAIM

The FMLA was enacted to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons" while doing so "in a manner that accommodates the legitimate interests of

employers." 29 U.S.C. § 2601(b)(1)-(3). The FMLA benefits

employees in two ways: (1) it provides substantive rights and a

cause of action against employers who interfere with those

rights; and (2) it provides protection by prohibiting an employer

from retaliating against an employee who exercises their rights.

See Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005).

Accordingly, an employee may bring either an interference claim

or a retaliation claim under the FMLA.

Plaintiff alleges that Defendant retaliated against him

for taking an FMLA leave of absence. The Court analyzes this

claim under the McDonnell Douglas framework.

### 1. PRIMA FACIE CASE

First, a plaintiff must establish a prima facie case by

demonstrating that: (1) he is protected under the FMLA; (2) he

suffered an adverse employment action; and (3) there was a causal

connection between exercising an FMLA right and the adverse

employment action. See Conoshenti, 364 F.3d at 135.

### a. Eligibility

The FMLA only protects eligible employees and, to be

eligible, an employee must: (1) have been employed "for at least

twelve (12) months by the employer with respect to whom leave is

requested;" and (2) have worked "for at least 1,250 of service

-13-

with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A); see also Sinacole v. iGate Capital, 287 F. App'x 993, 996 (3d Cir. 2008) (dismissing claim where employee did not meet FMLA minimum hour requirement); Dormeyer v. Comerica Bank-Ill., 223 F.3d 579, 582 (7th Cir. 2000) (holding FMLA rights are conferred only on those who meet eligibility requirements).

Plaintiff concedes that he does not meet the statutory requirements of eligibility. (Pl.'s Dep. 202:3-4 (stating "I hadn't been there 12 months"); id. at 199:19-21 (admission of fact by Plaintiff's counsel).) Plaintiff claims, however, that Defendant acted in a manner that led him to believe he was eligible under the FMLA and that Defendant should be estopped from now disclaiming his eligibility. (Pl.'s Resp. Mot. Dis. at 3-6.) In short, Plaintiff argues for application of the doctrine of equitable estoppel.[9] (Id.)

---

[9] Equitable estoppel is "a defensive doctrine preventing one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, with the result that the other person has been injured in some way." Black's Law Dictionary (8th ed. 2004). The doctrine seeks to avoid injustice when "one person makes a definite representation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does act." Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 59 (1984). An implicit requirement is that the party claiming equitable estoppel "must have relied on its adversary's conduct 'in such a manner as to change his position for the worse.'" Id.

Plaintiff cautions that "little case law exists discussing whether . . . equitable estoppel applies" in the context of an FMLA retaliation claim. (Pl.'s Resp. Mot. Summ. J. at 49.) In fact, he has identified none and the Court's independent research has not located any authority in support of this novel proposition.[10] Accordingly, the Court declines to go where no court has gone before.

Under these circumstances, Plaintiff fails to satisfy the first element of a _prima facie_ case.[11] Therefore, granting Defendant's motion for summary judgment as it relates to his FMLA claim is appropriate.

---

[10] Plaintiff's equitable estoppel argument is premised on documents given to him on February 11, 2008 which he characterizes as FMLA forms. Even assuming, _arguendo_, that those documents actually constituted a misrepresentation, Plaintiff fails to demonstrate detrimental reliance on those documents. Plaintiff seeks to apply equitable estoppel where the detrimental reliance occurred before the misrepresentation, yet fails to argue why the Court should alter the temporal requirements in such a manner. Accordingly, Plaintiff cannot satisfy the elements of equitable estoppel, i.e. that a misrepresentation of fact occurred prior to his leave of absence.

[11] Even assuming, _arguendo_, that Plaintiff establishes eligibility, he still fails to prove a causal connection between his leave of absence and his termination. At best, Plaintiff infers a causal connection due to the temporal proximity of the two events, but "the mere fact that an adverse employment action occurs after [a protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden." _Robinson v. City of Pittsburgh_, 120 F.3d 1286, 1302 (3d Cir. 1997). Plaintiff must produce affirmative evidence to survive summary judgment, which he has not done, and, thus he fails to establish the third element of a _prima facie_ case.

**B.    ADA[12]/PHRA[13] CLAIMS**

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to [employment]."  42 U.S.C. § 12112(a). Also, the ADA prohibits an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the Act] or because such individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  The former provision prohibits discrimination on account of a person's disability while the latter prohibits retaliation against a person who engages in a protected activity.

Discrimination and retaliation claims are distinct causes of action with separate elements, and both aim to prevent

_____

[12]    The Court notes that in 2008, Congress amended the ADA to broaden the scope of protection available under the ADA.  ADA Amendments Act of 2008 (the "ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553, 3553-59 (2008) (effective January 1, 2009).  Although Defendant stipulates that Plaintiff is disabled for purposes of this motion, the ADAAA is inapposite because courts apply the law as it stood when the complained-of acts occurred.  See Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994).

[13]    Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts and therefore, our disposition of Plaintiff's ADA claims applies with equal force to his PHRA claims.  See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002).

different types of harm.  It is not clear from the record under which provision Plaintiff pursues his claims.  For the sake of completeness, the Court will analyze Plaintiff's claims under both provisions.[14]

### 1. DISCRIMINATION CLAIMS

Plaintiff alleges that he was subject to disparate treatment because of his disability.  The Court analyzes these claims under the McDonnell Douglas framework.

### a. **Prima Facie** Case

First, a plaintiff must establish a prima facie case by demonstrating that: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without accommodation; and (3) he has suffered an adverse employment action as a result of his disability.  See Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006).

_____

[14] Although Plaintiff refers to a "failure to accommodate" in his complaint, the record is clear that he could not establish a prima facie case for this type of claim.  To establish a prima facie case, a plaintiff must prove that an accommodation was requested.  See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 319-20 (3d Cir. 1999) ("the employer must know of both the disability and the employee's desire for accommodation").  Plaintiff admits that he never requested an accommodation and, therefore, a failure to accommodate claim would fail.  (See Pl.'s Dep. 102:16-24.)

The parties dispute whether Plaintiff is actually otherwise qualified and could establish the second element of a prima facie case. However, the Court need not decide whether Plaintiff establishes the second element because, assuming, arguendo, that Plaintiff made a prima facie showing, his claims would nevertheless fail under the third prong of the McDonnell Douglas framework. Specifically, Plaintiff fails to adduce sufficient evidence to show that Defendant's legitimate, nondiscriminatory reasons are pretextual.

### b. Burden Shift

Assuming, arguendo, that Plaintiff has established a prima facie case, the burden shifts to Defendant who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. The Court finds Defendant has articulated such reasons.

Plaintiff was terminated on February 26, 2008 for unexcused absences and for failure to provide proper medical documentation. (Def.'s Mot. Summ. J. at 15-17.) From January 24 through February 26, 2008, Plaintiff reported to work on only one day - February 11. Although Plaintiff provided adequate explanation for his absences during his hospitalization, he does not provide any reason, justification, or excuse to explain why

-18-

he worked only one day following his release from the Horsham Clinic.  Defendant asserts that Plaintiff was terminated because his unexcused absences were in violation of the employment policy requiring "[r]egular and consistent attendance . . . [as] essential [to] employment."  (Employment Policy, Def.'s Mot. Summ. J. Ex. B-5.)

Accordingly, Defendant has articulated legitimate, nondiscriminatory reasons for Plaintiff's termination.

### c.   Pretext

Once Defendant has articulated legitimate, nondiscriminatory reasons, the burden returns to Plaintiff who must prove, by a preponderance of the evidence, that Defendant's reasons are a pretext.  The Court finds that Plaintiff has not met his burden.

To prove pretext Plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Tomasso, 445 F.3d at 706-07.  Plaintiff claims that Defendant's articulated reasons are "downright false and not worthy of credence" and that a

-19-

genuine issue of fact exists regarding the number of and reason for his absences prior to his hospitalization.  (<u>See</u> Pl.'s Resp. Mot. Summ. J. at 42-46.)  However, Plaintiff proceeds to refute only the allegations of absences prior to his hospitalization on January 24, 2008.  (<u>Id.</u>)

The lack of explanation regarding the post-hospitalization absences, which standing alone were sufficient to justify his termination, proves fatal to Plaintiff's claims. <u>See, e.g.</u>, <u>McKennon v. Nashville Banner Pub. Co.</u>, 513 U.S. 352 (1995) (standing for a broader proposition that an employer's liability ends when it has a valid reason for an adverse employment decision); <u>Kautz v. Met-Pro Corp.</u>, 412 F.3d 463, 467 (3d Cir. 2005) ("plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that <u>each</u> of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action") (quoting <u>Fuentes</u>, 32 F.3d at 764) (emphasis in original); <u>Logue v. Int'l Rehab. Assoc., Inc.</u>, 837 F.2d 150, 155 (3d Cir. 1988) ("the falsity of one [reason] does not necessarily justify finding the remaining articulated reasons pretextual").  In other words, the Third Circuit requires a "plaintiff[] to present evidence contradicting

the core facts put forward by the employer as the legitimate reason for its decision," which Plaintiff here does not do. Kautz, 412 F.3d at 467.

In this case, Plaintiff ignores his post-hospitalization absences and apparently presumes that working only one day over the span of a month does not warrant explanation or discussion. While true that Plaintiff's hospitalization absences were excused and he disputed the veracity of his pre-hospitalization absences, the fact remains that after January 24, 2008 Plaintiff reported to work on only one occasion before his termination and does not provide any explanation as to why. Accordingly, Plaintiff does not produce sufficient evidence to find Defendant's legitimate, nondiscriminatory reasons unworthy of credence and, thus pretextual.

### d. Conclusion

Even assuming, arguendo, that Plaintiff establishes a prima facie case, he fails to adduce sufficient evidence to show that Defendant's legitimate, nondiscriminatory reasons are a pretext. Accordingly, granting Defendant's motion for summary judgment as it relates to all discrimination claims is appropriate.

## 2. RETALIATION CLAIMS[15]

Plaintiff alleges that he was retaliated against because he disclosed the existence of his disability. The Court analyzes these claims under the <u>McDonnell Douglas</u> framework.

### a. <u>Prima</u> <u>Facie</u> Case

First, a plaintiff must establish a <u>prima facie</u> case by demonstrating that: (1) he engaged in a protected activity; (2) there was an adverse employment action either contemporaneous with or immediately after the protected activity; and (3) there is a causal connection between the protected activity and the adverse employment action. <u>See</u> <u>Williams</u>, 380 F.3d at 759.

#### i. Protected Activity

With respect to a protected activity, the ADA prohibits retaliation against any "individual [who] has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

Plaintiff concedes that he did not request an

---

[15] An ADA retaliation claim may be brought by any individual who engages in a protected activity, regardless of whether they are disabled. <u>See</u> <u>Shellenberger v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 191 (3d Cir. 2003).

accommodation and does not claim to have filed an ADA complaint.
(Pl.'s Resp. Mot. Summ. J. at 48; Pl.'s Dep. 102:16-24.)
Nonetheless, Plaintiff avers that he engaged in protected
activity when he informed Ikkala that he suffered from Bipolar I
Disorder.  (Pl.'s Resp. Mot. Summ. J. at 48.)  Plaintiff,
however, does not point to any authority which provides that an
employee who notified his employer that he is disabled, without
more, was found to have engaged in a protected activity under the
ADA.  Furthermore, the Court's independent research has not
located any case law to support Plaintiff's position.

On the contrary, Plaintiff's proposition would belie
Third Circuit case law requiring an employee to provide the
employer with both notice of the disability and a request for an
accommodation.  See, e.g., Colwell v. Rite Aid Corp., 602 F.3d
495, 506 (3d Cir. 2010) ("the employee 'must make clear that
[he/she] wants assistance for his or her disability'") (internal
citations omitted); Taylor, 184 F.3d at 313 (although employee's
request "does not have to be in writing, be made by the employee,
or formally invoke the words 'reasonable accommodation,' . . .
the employer must know of both the disability and the employee's
desire for accommodation") (emphasis added).  Plaintiff simply
declaring that he has Bipolar I Disorder, or even that he is

disabled, without more, is insufficient to constitute a protected activity under the ADA.

Accordingly, Plaintiff fails to establish the first element of a _prima facie_ case for retaliation.[16]  Therefore, granting Defendant's motion for summary judgment as it relates to all retaliation claims is appropriate.

## IV.  DEFENDANT'S MOTION FOR LEAVE TO FILE A REPLY AND PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S REPLY BRIEF

Defendant has moved for leave to file a reply in further support of its motion for summary judgment.  (Def.'s Mot. Reply.)  Defendant's reply alleged, and pointed to facts of record in support thereof, that Plaintiff's response to the motion for summary judgment contained a number of factual inconsistencies. (See id.)

In response, Plaintiff moved to strike Defendant's reply.  (Pl.'s Mot. Strike.)  Plaintiff's brief focuses on demonstrating that Defendant's reply is unnecessary but fails to

---

[16]  Even assuming, _arguendo_, that Plaintiff establishes a _prima facie_ case, his claims still fail under the third prong of the _McDonnell Douglas_ framework.  Specifically, Defendant has articulated legitimate, nondiscriminatory reasons for the adverse employment action and, for the same reasons as described above, Plaintiff fails to adduce sufficient evidence to show that Defendant's legitimate, nondiscriminatory reasons are a pretext.

directly refute the alleged inconsistencies.

Accordingly, the Court grants Defendant's motion for
leave to file a reply and denies Plaintiff's motion to strike.


**V.    CONCLUSION**

For the reasons described above, Defendant's motion for
summary judgment and motion for leave to file a reply are
granted.  Plaintiff's motion to strike is denied.  An appropriate
order follows.

```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

```
JOHN C. PRIGGE,                  :    CIVIL ACTION
                                 :    NO. 09-175
        Plaintiff,               :
                                 :
        v.                       :
                                 :
SEARS HOLDING CORP.              :
                                 :
        Defendant.               :
```

## O R D E R

**AND NOW**, this **9th day** of **July, 2010,** it is hereby

**ORDERED** that Defendant's motion for summary judgment (doc. no.

15) and motion to file a reply (doc. no. 19) are **GRANTED.**

It is **FURTHER ORDERED** that Plaintiff's motion to strike

(doc. no. 20) is **DENIED.**

**AND IT IS SO ORDERED.**

 S/Eduardo C. Robreno

**EDUARDO C. ROBRENO, J.**